**COMMONWEALTH OF PUERTO RICO**
**GENERAL COURT OF JUSTICE**
**COURT OF FIRST INSTANCE**
**SAN JUAN PART**

| | |
|---|---|
| WILLIAM BRUCE HARRISON and* | |
| SOPHIE ELIZABETH CLANCY * | Case No. SJ2026CV__________________________ |
| * | |
| Plaintiffs * | Re: Collection of Money |
| * | Breach of Contract |
| v. * | Damages |
| * | |
| FLT EQUITY, LLC * | |
| * | |
| Defendant * | |
| ***************************** | |

**COMPLAINT**

TO THE HONORABLE COURT:

Now come plaintiffs Mr. William Harrison ("Harrison") and Ms. Sophie Clancy ("Clancy") (Harrison and Clancy collectively "Plaintiffs"), through the undersigned counsel, and very respectfully state and pray:

**I. Jurisdiction and Venue**

1. This Honorable Court has jurisdiction over the instant complaint pursuant to 4 L.P.R.A. § 25c and 32 L.P.R.A. Ap. V, R. 3.1.

2. This Honorable Court has competence over the instant complaint pursuant to 32 L.P.R.A. Ap. V, RR. 3.3 and 3.5, given that the claims arise out of a lease agreement for real property in San Juan, Puerto Rico and given that the sole defendant is not a resident of Puerto Rico.

**II. The Parties**

3. Plaintiffs are natural persons, who are single, but who live together and have a baby. Plaintiffs' address is 1402 Luchetti Street, San Juan, Puerto Rico 00907. Plaintiffs' telephone

number is 713-400-4859. Plaintiffs' e-mail addresses are sophieclancy.personal@gmail.com and wharrison@cathexis.com.

4. Defendant FLT Equity, LLC ("FLT" or "Defendant") is a foreign limited liability company not duly authorized to conduct business in Puerto Rico. Plaintiffs last known address is 2082 Michelson Drive, 4th Floor, Irvine, CA 92612. FLT's last known telephone number is 917-445-1117. FLT's e-mail addresses are bferdig@trinity-pm.com and lucy@niftyreno.com.

## III. Factual Assertions

5. FLT is the owner of that certain residential real property located at 2061 Cacique Street, Ocean Park, San Juan, Puerto Rico 00911 (the "Property").

6. On October 13, 2025, Plaintiffs, as lessees, and Defendant, as lessor, entered into that certain Residential Lease Agreement (the "Agreement") for the Property.

7. The Agreement was for the period of December 1, 2025 to December 1, 2027.

8. Pursuant to sections IV.D.1, IV.D.2 and VI of the Lease, on October 13, 2025, Plaintiffs provided to Defendant the sum of $35,000.00 for the rent for the first month of the lease and the sum of $35,000.00 as a security deposit.

9. The Agreement provides for a maximum applicable interest rate equal to the lowest of the maximum rate permitted by law or 12%.

10. On or around November 27, 2025, upon visiting the Property in preparation for the Plaintiffs to take possession of the Property, Plaintiffs found that the property was full of dust and the air quality so poor that it represented a health hazard.

11. Plaintiffs brought to Defendant's attention the situation of the dust and air quality in the Property, which resulted in Defendant allegedly hiring White Glove Cleaning Services to perform a "deep clean" of the Property, which allegedly took place on December 1, 2025.

12. Originally, the parties were under the impression that the inordinate amount of dust present in the Property was a result of construction activities taking place in the vicinity of the Property.

13. However, despite Defendant allegedly performing a "deep clean" of the Property, the Property continued to exhibit an extraordinary amount of dust that would keep reappearing despite the surfaces of the Property being cleaned and the air quality in the Property continued to be so poor as to amount to a health hazard.

14. On December 12, 2025, Plaintiffs caused Zimmetry Environmental Management Corp. ("Zimmetry") to perform an inspection of the Property.

15. In December 2025, Zimmetry issued an "Industrial Hygiene Report of Visual Inspection and Wipe Surface Sampling for Silica Dust" (the "Report").

16. In the Report, Zimmetry found, among other things, that "Quartz silica dust was present in variable amounts over 73% (11 of 15) of all representative surfaces surveyed on the date of the evaluation… as a strong indication of cement dust contamination."

17. In the Report, Zimmetry found, among other things, that "most dust reservoirs found and documented couldn't be reasonably associated to any evident or specific migration pathway initiating from" the construction in the vicinity of the Property.

18. In the Report, Zimmetry found, among other things, that the "most probable sources for the said aerosols' depositions will have to be associated to the impacted [P]roperty's own renovation/building procedures, conducted some eight months ago."

19. In the Report, Zimmetry found, among other things, that the "the characterized contamination found distributed through the dwelling could not be reasonably associated,

exclusively nor even mostly, to exterior intrusion from the east side of the [P]roperty;" the east side being where the adjacent construction was taking place.

20. According to Zimmetry, "conditions found associated to generalized construction-like dust deposits accumulated over miscellaneous horizontal surfaces and hard-to-reach locations, are typical of renovation/construction work performed without proper fugitive dust controls and grossly deficient post-construction pre-occupancy deep cleaning work."

21. Exposure to silica dust, such as the one found in the Property even after Defendant's alleged "deep cleaning" of the Property, "represents an obvious danger with unknown risks… [as] disturbing settled dust that contains crystalline silica creates a significant health risk, as microscopic particles become airborne and can be inhaled deep into the lungs… [which] can lead to severe incurable diseases, including silicosis, lung cancer, and other chronic respiratory and autoimmune conditions."

22. As a result of Zimmetry's findings in its report and due to Defendant's inability to surrender the Property in an adequate state for its use in breach of its contractual and statutory obligation as lessor and despite Defendant already having performed a "deep cleaning" of the Property, on December 16, 2025, Plaintiffs sent Defendant a "Notice of Termination" terminating the Agreement effective December 31, 2025, and requesting that Defendant return to Plaintiffs the $70,000.00 paid by Plaintiffs to Defendant under the Agreement by December 31, 2025 (the "NOT").

23. Defendant failed to timely respond to the NOT and to reimburse to Plaintiffs the $70,000.00 by December 31, 2025.

24. As a result of the Property not being in an adequate state for its use, Plaintiffs, who at that time already had a baby, were never able to move into, occupy and use the Property but

rather had to urgently lease a different residential property, as they did not have another place to reside in Puerto Rico.

25. Due to a lack of inventory of properties in the San Juan area of similar size and quality to the Property and the urgency of securing a place to reside in, on December 17, 2025, Plaintiffs had to enter into the lease for the other residence at a rent of $40,000.00 a month for the period of January 1, 2026 to December 31, 2027.

26. On January 22, 2026, Plaintiffs once again requested that Defendant reimburse the $70,000.00 to them and granted it a period of 10 days to do so and advised it that, if Defendant failed to reimburse the $70,000.00 to Plaintiffs, they would file the corresponding legal claim against Defendant.

27. On January 26, 2026, Defendant finally responded to the NOT and to Plaintiffs' communication of January 22, 2026 denying Plaintiffs' assertions and did not reimburse Plaintiffs the $70,000.00.

28. On February 24, 2026, Plaintiffs made a settlement offer to Defendant in a good-faith attempt to resolve the instant controversy amicably and without the need for the Honorable Court's intervention, to no avail.

## IV. Causes of Action

### A. First Cause of Action: Collection of Monies Paid

29. Plaintiffs incorporate herein by reference all prior paragraphs of the complaint.

30. Pursuant to the Agreement, Plaintiffs paid Defendant the aggregate sum of $70,000.00 for the rent for the first month and the security deposit.

31. Due to Defendant's breach of its contractual and legal obligations as landlord to surrender the Property in an adequate state for its use, pursuant to Article 1345(a) of the Puerto

Rico Civil Code, 31 L.P.R.A. § 10161(a), Plaintiffs were unable to occupy and use the Property and had to terminate the Agreement without ever moving into and taking possession of the Property.

32. Plaintiffs are entitled to recoup the $70,000.00 paid to Defendant in full, plus applicable default ("mora") interests at 12% a year from and including January 1, 2026 over the $70,000.00, plus interests over the accrued default interests at the legal rate from the date of filing of the complaint.

33. Plaintiffs request that Defendant be ordered to reimburse to Plaintiffs the amount of $70,000.00, plus the accrued default interests at 12% a year from and including January 1, 2026 over the $70,000.00, plus interests over the accrued default interests at the legal rate from the date of filing of the complaint.

**B. Second Cause of Action: Damages**

34. Plaintiffs incorporate herein by reference all prior paragraphs of the complaint.

35. As a result of Defendant's breach of its contractual obligation to deliver the Property in an adequate state for its use, Plaintiffs had to lease a different residential property at a higher rent than they would have had to pay under the Lease.

36. Defendant is liable to Plaintiffs for the difference between the higher rent of $40,000.00 a month that Plaintiffs have to pay for the other residential property and the $35,000.00 a month rent that Plaintiffs would have had to pay under the Lease.

37. Defendant owes Plaintiffs the due and payable amount of $115,000.00 for the difference between the rent that Plaintiffs would have had to pay under the Lease and the rent that Plaintiffs are paying and will have to pay under the lease for the alternate residence for the period of January 1, 2026 to November 30, 2027.

**C. Third Cause of Action: Cost of Zimmetry's Report**

38. Plaintiffs incorporate herein by reference all prior paragraphs of the complaint.

39. Due to Defendant's failure to surrender the Property in an adequate state for its intended use as a residence, Plaintiffs had to hire Zimmerty to perform an inspection of the Property and render the Report.

40. Had Defendants surrendered the Property in an adequate state for its intended use, Plaintiffs would not have had to incur in the expenses that engaging Zimmetry entailed.

41. Plaintiffs paid Zimmetry $9,204.00 for the inspection of the Property and issuing the Report.

42. Plaintiffs request that Defendant be ordered to reimburse to Plaintiffs the amount of $9,204.00 for Zimmetry's inspection of the Property and the Report.

**D. Fourth Cause of Action: Contractual Costs, Expenses and Attorney's Fees**

43. Plaintiffs incorporate herein by reference all prior paragraphs of the complaint.

44. Section XXX of the Agreement provides that if the Plaintiffs "institute any suit against Landlord for violation of any of the covenants or conditions of this Lease,…the prevailing party in any such suit shall be entitled to reimbursement by the other party of all its costs, expenses and reasonable fees of its attorney(s) (if an to the extent permitted by law) in connection therewith."

45. Puerto Rico law does not prohibit nor does it set a cap to the costs, expenses and reasonable attorney's fees that a prevailing party may recover pursuant to a contractual clause allowing for the recovery by the prevailing party of the litigation costs, expenses and attorney's fees.

46. Upon prevailing on the instant complaint, Plaintiffs will be contractually entitled to recover from Defendant the costs, expenses and reasonable attorney's fees of the litigation of caption.

47. Plaintiffs request that Defendant be ordered to reimburse Plaintiffs for all of the costs, expenses and reasonable attorney's fees incurred by Plaintiffs in the case of caption, which amount will be ascertained upon completion of the litigation.

**E. Fifth Cause of Action: Interests and Attorney's Fees for Temerity**

48. Plaintiffs incorporate herein by reference all prior paragraphs of the complaint.

49. Defendant acted with temerity or frivolously when it ignored Plaintiffs' request for Defendant to reimburse Plaintiffs the $70,000.00.

50. Plaintiffs would not have had to sue Defendant if Defendant had timely reimbursed Plaintiffs the $70,000.00.

51. Defendant's failure to timely respond to the NOT and its failure to reimburse Plaintiffs the $70,000.00 caused Plaintiffs to incur expenses and take actions that would have otherwise been avoidable, including, without limitation, the retaining of counsel and the filing of the instant complaint.

52. Plaintiffs request that Defendant be found to have acted with temerity and that it be ordered to pay Plaintiffs interests for temerity at the legal rate set by the Office of the Commissioner of Financial Institutions (the "OCIF" for its Spanish acronym) from January 1, 2026 as to the $70,000.00 and from the date of the complaint as to the other claims, pursuant to 32 L.P.R.A. Ap. V, R. 44.3(b), and a reasonable amount of attorney's fees for temerity, no less than $10,500 (15% of the principal amount claimed of $70,000.00), pursuant to 32 L.P.R.A. Ap. V, R. 44.1(d).

WHEREFORE Plaintiffs respectfully request from the Honorable Court that it grant the complaint of caption and enter judgment for Plaintiffs and against Defendant ordering Defendant to pay Plaintiffs: (a) $70,000.00 for the reimbursement of the security deposit and the first month's rent; (b) default interests at the legal rate set from time to time by the Office of the Commissioner of Financial Institutions (the "OCIF" for its Spanish acronym) from January 1, 2026 until the date of the judgment or the payment in full of the $70,000.00, whichever occurs first; (c) interests over the accrued default interests at the legal rate from the date of filing of the complaint; (d) damages in the amount of $115,000.00 for the difference in rent that Plaintiffs will have to pay for the alternate residence; (e) $9,204.00 for the costs and expenses of Zymmetry's inspection and Report; (f) all the reasonable costs, expenses and attorney's fees incurred by the Plaintiffs in the litigation; (g) the corresponding interests and attorney's fees for temerity, pursuant to 32 L.P.R.A. Ap. V, R. 44.1(d) and 44.3(b); and (h) post-judgment interests over all amounts adjudicated to Plaintiffs in the judgment at the legal rate set by the OCIF pursuant to 32 L.P.R.A. A. V, R. 44.3(a).

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico on June 2, 2026.

CORRETJER, L.L.C.
Counsel for Plaintiffs
625 Ave. Ponce de León
San Juan, PR 00917-4819
Tel. 787-751-4618
Fax: 787-759-6503

/s/ Eduardo J. Corretjer Reyes
RÚA No. 15,985
ejcr@corretjerlaw.com